1

2                                                                              O

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT BEARD,                          )    Case No.  2:08-CV-00137 CAS
                                            )
12                    Plaintiff,            )
                                            )    ORDER GRANTING DEFENDANTS'
13   vs.                                    )    MOTIONS TO DISMISS
                                            )
14   KIMBLE, ET AL.,                        )
                                            )
15                    Defendants.           )
     _____       )
16

17   **I.      INTRODUCTION**

18          In December 2007, plaintiff Robert Beard filed a section 1983 prisoner civil

19   rights claim seeking redress for events that allegedly occurred during his incarceration

20   at the California Department of Corrections.  The complaint was filed in the United

21   States District Court for the Eastern District of California, and named as defendants

22   Sergeant John Doe and Correctional Officer Kimble.[1]  Dkt. No. 1.  Plaintiff failed to

23   prosecute his claim until January 2009.  In May 2009, when plaintiff attempted to effect

24   service on Officer Kimble, it was discovered that Officer Kimble was deceased.  Dkt.

25   No. 23.  Leave to file an amended complaint was granted October 16, 2009.

26   / / /

27   _____

28
            [1]During the time that this action was filed, the Eastern District was overburdened
     with cases.  In order to ease the burden, this case was reassigned to this Court.

1    Plaintiff filed the operative First Amended Complaint ("FAC") on October 26,

2    2011, which named Correctional Officer Hull and Lieutenant Bishop as defendants

3    (collectively "defendants").  Dkt. No. 31.  Plaintiff alleges that during his incarceration,

4    defendants violated his civil rights by: (1) using excessive force in violation of the

5    Eighth Amendment; (2) displaying deliberate indifference to his health in violation of

6    the Eighth Amendment; (3) displaying deliberate indifference to his safety in violation

7    of the Eighth Amendment; (4) committing elder abuse against him; (5) violating his

8    right to equal protection secured by the Fourteenth Amendment; (6) denying him due

9    process in violation of the Fourteenth Amendment; (7) retaliating against him; (8)

10   vicarious liability; and (9) violating the Americans with Disabilities Act, 42 U.S.C. §

11   12101, et seq. ("ADA").  Plaintiff seeks to vindicate his civil rights pursuant to 42

12   U.S.C. § 1983 (1996).  See generally FAC.

13   On August 9, 2013, defendants filed a motion to dismiss plaintiff's FAC,

14   pursuant to Federal Rules of Civil Procedure 12(b), 12(b)(6), 8(a) and 8(d).  Dkt. No.

15   42-1.  Defendants argue that: (1) plaintiff failed to exhaust all administrative remedies;

16   (2) the complaint fails to state a claim as a matter of law; and (3) the complaint does not

17   contain a short and plain statement of claims.  On May 14, 2014, defendants withdrew

18   the exhaustion defense from their motion to dismiss, following the Ninth Circuit's

19   decision in Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc) (holding that

20   appropriate procedure for adjudicating a failure to exhaust administrative remedies

21   defense is summary judgment motion under Fed. R. Civ. P. 56).[2]  Dkt. No. 71. / / /

22

23

24   [2] It is well settled that defendants bear the burden of demonstrating plaintiff's alleged

25   failure to exhaust administrative remedies under the Prison Litigation Reform Act
     ("PLRA").  Albino v. Baca, 697 F.3d 1023, 1032 (9th Cir. 2012 ).  Defendants sought

26   leave to file a motion for summary judgment on this issue.  However, because the Court
     concludes that plaintiff has failed to state a claim for the reasons stated infra, defendants'

27   request is hereby DENIED as moot.

28

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Plaintiff is an inmate proceeding *pro se*.  Plaintiff commenced this action while incarcerated at the High Desert Prison in Susanville, CA.  Plaintiff identifies two discrete incidents where defendants allegedly violated his rights: a November 18, 2007 pepper-spraying incident and related disciplinary proceedings, and a December 29, 2007 incident where plaintiff was assaulted by his cellmate William Doe ("William").

### A.    The November 18, 2007 Pepper-Spraying Incident

Plaintiff alleges that he requested medical attention on October 24, 2007, due to swelling from an infected leg.  On November 16, 2007, plaintiff received the required medical treatment, including a minor surgical procedure, and was released from the prison infirmary with a bandaged leg and a prescription for "very strong painkillers." FAC at 5.   Plaintiff was instructed to report to the infirmary for daily re-bandaging and to receive his medication.  Id.

On November 18, 2007, plaintiff was released from his cell by Officer Kimble, who was operating the control booth, and was instructed to report to the infirmary for his daily treatment.  FAC at 6.  On his way to the infirmary, plaintiff was allegedly intercepted by an unnamed officer who instructed plaintiff to return to his cell without treatment.  Id.  When plaintiff returned to the cell block, he spoke with Officer Hull, requesting that he bring a sergeant to help plaintiff access his medical treatment and to hear plaintiff's request for a cell transfer.  Id.  Plaintiff refused to "go anywhere" until a sergeant arrived, but alleges he made no physical or verbal threats towards any of the officers.  Id.  Nonetheless, plaintiff alleges that Officer Hull then sprayed mace in his eyes and "over his entire body" from the control booth located 20 feet above plaintiff.[3]

---

[3] The FAC repeatedly identifies the officer who sprayed plaintiff as Officer Kimble.
(continued...)

Plaintiff was subsequently handcuffed and placed in a holding cell. Id. After "about 5 hours," plaintiff was released from the holding cell. FAC at 7. At 7:30 PM, shortly after being released, plaintiff approached Officer Kimble to request his name and to inform him that plaintiff would be filing a complaint against him for the "wrongfully inflicted" punishment.[4]

On November 23, 2007, plaintiff received a Rules Violation Report ("RVR") written by Officer Hull stating that plaintiff was being punished for violating rule 3005(D), "obstructing a peace officer," during the November 18, 2007 pepper-spraying incident. FAC at 8. The report described the interaction between plaintiff and the officers as "escalating" because plaintiff refused to return to his cell, and stated that three officers and an "mk-45," a pepper-spray device, were needed to maintain control. Id. According to the report, plaintiff "clenched [his fists] and took a step backward" while refusing several orders to lie down. Id. At this point, the report indicates that Officer Hull sprayed plaintiff with mace "in his eyes and upper body" and placed him in handcuffs. Id. Upon receiving the report, plaintiff requested a "staff assistant or investigator" to assist him with preparing for his disciplinary hearing. Id. Officer Williams told plaintiff that he would be interviewed by a staff assistant/investigator in the "next few days." Id. Seven days passed and plaintiff was not interviewed, nor was he informed whether his request for the investigator was approved or denied. Id.

/ / /

---

[3](...continued)

However, plaintiff alternately states in the FAC that "Hull falsely claims that he was posted in the control booth . . . when he sprayed me with mace." Construing the FAC in the light most favorable to plaintiff, the Court accepts as true that it was Officer Hull who sprayed plaintiff. The Court also notes that Officer Hull himself admits to spraying plaintiff with mace in his official report. See Dkt. No. 42-2 at 29.

[4]As stated in note 3, supra, plaintiff maintains that Officer Kimble sprayed him. Thus, plaintiff approached Officer Kimble upon release from the holding cell rather than Officer Hull.

1    On November 24, 2007, around 7:30 AM, plaintiff approached Officer Hull and

2  accused him of writing a false disciplinary report in order to protect Officer Kimble

3  from legal action.  FAC at 9.   Plaintiff "challenged" Officer Hull to take a lie detector

4  test and told Officer Hull he would formally request a lie-detector test be

5  administered.  Id.

6    On November 30, 2007, plaintiff was released from his cell and instructed to

7  report to the program office for his disciplinary hearing.  Id.  Although plaintiff

8  requested a continuance and stated that he was not ready to proceed, the hearing officer,

9  Lieutenant Bishop, denied plaintiff's request, because plaintiff had already been given a

10  "reasonable chance" to gather evidence and witnesses, and to otherwise investigate the

11  report's allegations.  FAC at 10.  Plaintiff then requested that he be given a lie-detector

12  test and that the hearing be continued until one could be administered.  Lieutenant

13  Bishop denied both requests.  Id.  Plaintiff subsequently proceeded with the hearing

14  because "if [he] had refused to participate [Lieutenant Bishop] would have found [him]

15  guilty in absentia anyways."  Id.  When plaintiff told Lieutenant Bishop that it had been

16  Officer Kimble, rather than Officer Hull, who sprayed him, Lieutenant Bishop allegedly

17  stated that it "made no difference" because "[Lieutenant Bishop] was going to support

18  his subordinates no matter how they chose to handle any type of problem."   FAC at 13.

19  Lieutenant Bishop then found plaintiff guilty of refusing to obey orders and asked an

20  officer to escort him back to his cell.  Id.

21    **B.    The December 29, 2007 Assault by William**

22    In mid-November, while plaintiff was recovering from his leg surgery, another

23  inmate, William, was assigned to bunk with plaintiff for two days.  The relationship

24  between the two cellmates was poor.  Ten minutes after William moved in, he allegedly

25  told plaintiff that "he did not like [plaintiff's] hairstyle and if [plaintiff] didn't cut it

26  [William] was going to show [plaintiff] all kinds of disrespect."  FAC at 6.  plaintiff

27  initially decided that he could tolerate the "rude behavior" because it would only be for

28

1    a few days. Id.  On November 18, 2007, plaintiff attempted to request a cell transfer,

2    but ultimately remained assigned to the same cell.  FAC at 6, 13.

3        On December 29, 2007, plaintiff alleges he was sitting on his bed on the upper

4    bunk when William "assaulted [plaintiff] in [his] eye with [William's] fist."  FAC at 13.

5    Plaintiff reported the incident and was escorted to the medical unit where a "nurse

6    found that [he] was the victim of an assault."  Id.  After leaving the medical unit,

7    Sergeant Glen told plaintiff that he would be placed in administrative segregation

8    because "there were no other Black non-gang affiliated cells available on the

9    [appropriate] yard."  Id.  When plaintiff eventually returned to the yard, he was assigned

10   a new cell and a new cellmate, Dan Collins.  FAC at 15.

11   ### III.   LEGAL STANDARD

12       A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a

13   complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

14   need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

15   'entitlement to relief' requires more than labels and conclusions, and a formulaic

16   recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v.

17   Twombly, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a

18   right to relief above the speculative level."  Id.

19       In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all

20   material allegations in the complaint, as well as all reasonable inferences to be drawn

21   from them.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must

22   be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State

23   Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51

24   F.3d 1480, 1484 (9th Cir. 1995).  However, "[i]n keeping with these principles a court

25   considering a motion to dismiss can choose to begin by identifying pleadings that,

26   because they are no more than conclusions, are not entitled to the assumption of truth.

27   While legal conclusions can provide the framework of a complaint, they must be

28   supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 129 (2009); Moss v.

United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal); Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981.)  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S.Ct. at 1950.

A document filed *pro se* must be liberally construed and is "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  In the Ninth Circuit, "we continue to construe pro se filings liberally [even] when evaluating them under Iqbal[.]" Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).  "This rule particularly applies to complaints and motions filed by *pro se* prisoners." Zichko v. Idaho, 247 F.3d 1015, 1020 (9th Cir. 2001), as amended (June 5, 2001); United States v. Seesing, 234 F.3d 456, 462-63 (9th Cir. 2000).  Further, this rule is particularly salient in civil rights cases. Hebbe, 627 F.3d at 342.  "However, a liberal interpretation of a *pro se* civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Litmon v. Harris, 768 F.3d 1237, 1241 (9th Cir. 2014) (citing Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)).

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998).  A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon

Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6).  United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

## IV.    DISCUSSION

The FAC alleges that defendants violated plaintiff's civil rights in contravention of the Civil Rights Act, 42 U.S.C. § 1983.  To state a claim under section 1983, plaintiff must allege that he: "[1] was deprived of a right secured by the Constitution or laws of the United States, and [2] that the alleged deprivation was committed under color of state law."  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999).  "A pleading will not be sufficient to state a claim under the Civil Rights Act if the allegations are mere conclusions."  Kennedy v. H & M Landing, Inc., 529 F.2d 987 (9th Cir. 1976). Defendants argue that plaintiff's FAC fails to allege the deprivation of rights secured by the Constitution, and, thus, plaintiff's section 1983 claim must fail.

### A.    Defendant Hull

Plaintiff alleges that Officer Hull: (1) violated his Eighth Amendment rights by utilizing excessive force; (2) violated his Eighth Amendment rights by displaying deliberate indifference to his health; (3) violated his Eighth Amendment rights by displaying deliberate indifference to his safety; (4) committed elder abuse; (5) violated his Fourteenth Amendment right to equal protection; (6) violated his Fourteenth Amendment due process rights; and (7) retaliated against him for exercising his First Amendment rights.

#### 1.    Excessive Force

Plaintiff alleges that Officer Hull violated his Eighth Amendment rights by utilizing excessive force in spraying mace into plaintiff's eyes and "all over [his] body." Defendants do not dispute that mace was used on plaintiff.

/ / /

1    The Eighth Amendment's "cruel and unusual" punishment clause protects inmates

2    against the "unnecessary and wanton infliction of pain." Ingraham v. Wright, 430 U.S.

3    651, 670 (1977) (quoting Gamble, 429 U.S. at 103).  When prison officials stand

4    accused of using excessive physical force in violation of the cruel and unusual

5    punishment clause, "the core judicial inquiry is . . . whether force was applied in a

6    good-faith effort to maintain or restore discipline, or maliciously and sadistically to

7    cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).  Further, the officers'

8    application of excessive force must have been "purposeful or knowing." Porter v.

9    Nussle, 534 U.S. 516 (2002) (citing Farmer v. Brennan, 511 U.S. 825 (1994)).

10   California regulations permit a corrections officer to use reasonable force to, inter

11   alia, "gain [inmate] compliance with a lawful order."  Cal. Code Regs. tit. 15, §

12   3268(a)(1).  Moreover, "[u]se of Force options do not have to be utilized in any

13   particular sequence, but should be the force option staff reasonably believes is sufficient.

14   Whenever possible, verbal persuasion or orders shall be issued prior to resorting to force

15   and are required to be provided before controlled force is used. . . . Use of force options

16   include but are not limited to: [¶] (1) Chemical Agents." Id. § 3268(c).

17   Here, as plaintiff himself alleges, he was pepper-sprayed by Officer Hull after

18   telling Officer Hull that he "was not going to go anywhere until after [the guards]

19   contacted a sergeant" about receiving his medication and a cell transfer—i.e., after

20   failing to comply with Officer Hull's order to return to his cell.  This allegation

21   demonstrates that the pepper-spray was applied in order to maintain discipline, rather

22   than to maliciously cause harm.  See Fugawa v. Trimble, No. 1:11-CV-00966, 2015 WL

23   672123, at *10 (E.D. Cal. Feb. 17, 2015) ("Officers are permitted to use reasonable force

24   in the execution of their duties, including gaining compliance with an order, [], and even

25   assuming Defendant did not, as Plaintiff alleges, give a verbal warning before employing

26   an immediate use of force[.]") (citations omitted); cf. Coleman v. Brown, 28 F. Supp. 3d

27   1068, 1079 (E.D. Cal. 2014) ("at least one appellate court has found that the Eighth

28   Amendment is violated by use of pepper spray on a mentally ill inmate who, because of

mental illness, is unable to comply with directives from prison officials and nonetheless is subjected to pepper spray."). Thus, plaintiff fails to allege facts sufficient to state a claim for excessive force, and the Court GRANTS defendants' motion to dismiss this claim accordingly.

## 2. **Deliberate Indifference to Health**

Plaintiff also alleges that Officer Hull violated his Eighth Amendment rights by delaying his receipt of medication and medical treatment prescribed for his leg infection.

"The government has an obligation to provide medical care for those whom it punishes by incarceration, and cannot be deliberately indifferent to the medical needs of its prisoners." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). If a prison official is deliberately indifferent to a prisoner's serious medical needs, the Eighth Amendment is violated. Gamble, 429 U.S. at 104-06 (1976). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).

To establish deliberate indifference with respect to medical care, a prisoner must satisfy both the objective and subjective components of the two-part test set forth in Brennan, 511 U.S. at 834. First, a plaintiff must show he had a "serious" medical need. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " McGuckin, 974 F.2d at 1059 (quoting Gamble, 429 U.S. at 104). Examples of serious needs for medical treatment include, "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; the existence of chronic and substantial pain[.]" Id. at 1059-60.

Second, the plaintiff must show the defendants' response to the serious medical need was deliberately indifferent. Jett, 439 F.3d at 1096. To establish deliberate indifference, a plaintiff must allege that the defendant purposefully ignored or failed to respond to the prisoner's pain or possible medical need. McGuckin, 974 F. 2d at 1060.

1   Moreover, unless the delay or denial of treatment was harmful to plaintiff's health,

2   simple delays in medical treatment do not state a claim for deliberate medical

3   indifference.  Id.; see, e.g., Farley v. Capot, 384 F. App'x 685, 686-87 (9th Cir. 2010)

4   (prisoner stated claim for deliberate indifference to serious medical need where he

5   alleged that doctor "refused to authorize two urgent requests for surgery on [prisoner's]

6   cancerous tumor without any explanation and that the approximately two-month delay in

7   surgery caused [the priosner] unnecessary pain and further serious harm."); Jett, 439

8   F.3d at 1096-97 (two-month delay in receiving treatment for fractured thumb and

9   nineteen-month delay in being seen by a hand specialist which caused pain and

10  diminished use of hand is sufficient to state deliberate indifference claim.)

11       Here, plaintiff has not alleged facts sufficient to support a finding of deliberate

12  indifference.  Plaintiff himself acknowledges that Officer Hull did not know he had been

13  denied medical treatment.  Specifically, plaintiff states "if Mr. Hull had given me a

14  chance to explain, he would then have known that a yard officer had refused to let me

15  visit the clinic and pick up my medication."  FAC at 11.  If Officer Hull was unaware

16  that plaintiff had been denied medical treatment, it follows that he did not act with the

17  requisite intent to state a claim for deliberate indifference.  See Fulcher v. California

18  Dep't of Corr., 297 F. App'x 645, 646 (9th Cir. 2008) (affirming dismissal of claim for

19  deliberate indifference to medical need where prisoner "failed to allege facts to establish

20  that these defendants knew of and disregarded a serious risk of harm to [the prisoner].").

21  Moreover, plaintiff has failed to allege how the five hour treatment delay caused him

22  further harm.  Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th

23  Cir. 1985) ("delay of [care], without more, is insufficient to state a claim of deliberate

24  medical indifference; . . . [there is] no claim for deliberate medical indifference unless

25  the denial [of care] was harmful."); see also Frost v. Agnos, 152 F.3d 1124, 1130 (9th

26  Cir. 1998) (alleged delays in administering pain medication did not constitute deliberate

27  indifference); Wood v. Housewight, 900 F.2d 1332, 1335 (9th Cir. 1990) (alleged delay

28  of several days in receiving pain medication was not a constitutional violation).  Because

1    plaintiff has not stated a claim for deliberate indifference to his health, the Court

2    GRANTS defendants' motion to dismiss this claim.

3                      3.    **Deliberate Indifference to Safety**

4         Next, plaintiff alleges that Officer Hull violated his Eighth Amendment rights by

5    leaving plaintiff in the same cell with an inmate who later assaulted him.  The Eighth

6    Amendment requires prison officials to take reasonable measures to guarantee prisoner

7    safety.  Brennan, 511 U.S. at 832.  Although prison officials have a duty to protect

8    prisoners from violence at the hands of other prisoners, not every injury suffered at the

9    hands of another inmate results in constitutional liability for prison officials.  Id. at 833-

10   34.  Rather, as discussed above, a prison official only violates the Eighth Amendment

11   when two requirements are met: (1) the deprivation is objectively sufficiently serious;

12   and (2) the prison official is subjectively, deliberately indifferent to the prisoner's safety.

13   Id.

14        Further, to hold a prison official liable for failure to prevent harm, a prisoner must

15   show: (1) that he was incarcerated under conditions posing a substantial risk of serious

16   harm; and (2) that the officer knew of and disregarded such a risk.  Id. at 837.  Thus, the

17   officer must be aware of facts from which the inference could be drawn that a substantial

18   risk of serious harm exists, and the officer must actually draw that inference.  Id.  The

19   level of culpable knowledge falls somewhere between "moral certainty" and "mere

20   suspicion" that an attack will occur.  Peralta v. Dillard, 744 F.3d 1076, 1086 (9th Cir.

21   2014) cert. denied, 2015 WL 132964 (U.S. Jan. 12, 2015).  Even if the officer knew or

22   should have known about a substantial risk, he may avoid liability if he responded

23   reasonably to the risk.  Id.; see also Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1188

24   (9th Cir. 2002).

25        The Court concludes that plaintiff's claim fails because he has not alleged that

26   Officer Hull (or Lieutenant Bishop) possessed the requisite knowledge to support a

27   finding of deliberate indifference.  Although plaintiff alleges that he approached Officer

28   Hull and asked that he contact a sergeant "so that [plaintiff] could make a request to be

transferred to another cell," plaintiff does not allege that he informed any of the officers why he was requesting the transfer. FAC at 6. Instead, plaintiff conclusorily alleges that Officer Hull knew that William was "subjecting [him] to threats, physical and verbal abuse without justification or provocation," and that Lieutenant Bishop "knew that his decision [to not separate plaintiff and his cellmate] was illegal and wrong." FAC at 11, 13. These allegations are insufficient.

Moreover, even if plaintiff explicitly described his dispute with William to Officer Hull or Lieutenant Bishop, it nonetheless would be insufficient to state a claim for deliberate indifference, because plaintiff has not alleged a "substantial" risk of harm. Here, plaintiff alleges that William threatened to show him "all kinds of disrespect." A threat of "disrespect" does not support an inference that a substantial risk of serious harm existed. Thus, because plaintiff has failed to demonstrate either a substantial risk of serious harm, or that defendants were aware of the risk of such harm, the Court GRANTS defendants' motion to dismiss the deliberate indifference to personal safety claim.

### 4.   **Elder Abuse**

Plaintiff alleges that Officer Hull committed elder abuse against him by forcing him to remain cellmates with William, which ultimately placed his health and safety in jeopardy. Plaintiff alleges that this was a violation of California Penal Code § 368, which protects elders and dependant adults from physical and financial abuse committed by those in custody of their care.

The Court concludes that this claim fails as a matter of law. First, plaintiff does not have standing to bring suit for a violation of the Penal Code. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Further, plaintiff cannot succeed on a civil claim for elder abuse because he does not meet the statutory definition of "elder" or "dependant adult." See Cal. Welf. & Inst. Code § 15610.27 (defining "elder" as any person residing in this state aged 65 years or older); Cal. Welf. & Inst.

1   Code § 15610.23 (defining "dependent adult" as "any person between the ages of 18 and

2   64 years who resides in this state and who has physical or mental limitations that restrict

3   his or her ability to carry out normal activities or to protect his or her rights, including,

4   but not limited to, persons who have physical or developmental disabilities, or whose

5   physical or mental abilities have diminished because of age.").  Here, plaintiff admits

6   that he was approximately 54 years old when these actions occurred; thus he does not

7   meet the statutory definition of "elder."  Further, while plaintiff alleges that he was being

8   treated for high blood pressure and had an injured leg, he fails to plead any facts alleging

9   that these conditions restricted his ability to carry out normal activities or to protect his

10  rights, as required to be classified as a "dependant adult."  Because plaintiff cannot show

11  that he was either an elder or a dependant adult as defined by the statute, the Court

12  GRANTS defendants' motion to dismiss the claim for elder abuse.

### 5.   **Equal Protection**

14      Plaintiff alleges that Officer Hull violated his Fourteenth Amendment rights by

15  filing a disciplinary report and placing plaintiff into administrative segregation when he

16  was assaulted by a different cellmate, Dan Collins.  This claim fails because the FAC

17  identifies non-parties Officer Malone and Sergeant Glen, not Officer Hull, as the parties

18  responsible for writing the report and for placing plaintiff in segregation.

### 6.   **Due Process**

20      Plaintiff alleges that Officer Hull violated his Fourteenth Amendment right to due

21  process by "refusing to participate in the grievance process."  Plaintiff's allegations do

22  not indicate any specific way in which Officer Hull refused to participate in the

23  grievance process.

24      A prisoner in a disciplinary hearing is entitled to certain, but not all, due process

25  protections afforded to a defendant in a criminal prosecution.  Wolff v. McDonnell, 418

26  U.S. 539, 556 (1974).  Specifically, an inmate has the right: (1) to written notice of the

27  charges at least 24 hours prior to the disciplinary hearing; (2) to appear in person before

28  an impartial hearing body; (3) to call witnesses and present documentary evidence; (4) to

receive a written statement of reasons for the disciplinary action taken; and (5) to assistance in obtaining and presenting evidence where the inmate is illiterate or the issue is too complex for the inmate to represent himself. Id. at 563-71.  However, the Court need not consider the adequacy of the procedural protections afforded to plaintiff in his disciplinary hearing unless it determines that the disciplinary action imposed an "atypical and significant hardship on [plaintiff] in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483-84; see also Williams v. Foote, 2009 WL 1520029, at *9 (C.D. Cal. May 28, 2009) ("If a deprivation creates an 'atypical and significant hardship' within the meaning of Sandin, so as to establish a protected liberty interest, then the Court must determine whether the plaintiff was given all the process due under Wolff.")

To determine whether a disciplinary action imposes an atypical and significant hardship on an inmate, Sandin directs courts to consider three factors: (1) whether the challenged action "mirrored those conditions imposed upon inmates . . . in administrative segregation and protected custody;" (2) the duration and degree of the restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. Chappell v. Mandeville, 706 F.3d 1052, 1064 (9th Cir. 2013); accord Sandin, 515 U.S. at 486-87.  Here, plaintiff does not allege that he was subjected to atypical conditions of confinement as a result of being found guilty of the rules violation.  In fact, plaintiff states that, following his disciplinary hearing, he was escorted by Officer Williams back to the very same cell where he had previously resided.  FAC at 13.  Because plaintiff has failed to allege that the disciplinary action imposed an atypical and significant hardship, the Court concludes that plaintiff has failed to state a claim for violation of his due process rights.  Accordingly, the Court GRANTS defendants' motion to dismiss this claim.

1          7.    **Retaliation**

2          Plaintiff also alleges that Officer Hull violated his Fourteenth Amendment rights

3    by filing a false report in retaliation for plaintiff exercising his First Amendment right to

4    file a grievance.  For the reasons stated below, this claim also fails.

5          To establish a claim for deprivation of due process under the Fourteenth

6    Amendment, the plaintiff must first identify the liberty interest for which protection is

7    sought.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  Prisoners have no

8    constitutional right to be free from wrongfully issued disciplinary reports.  See Hanrahan

9    v. Lane, 747 F.2d 1137 (7th Cir. 1984); Freeman v. Rideout, 808 F.2d 949 (2nd Cir.

10   1986); Foote, 2009 WL 1520029, at *7 ("A prisoner does not have a constitutional right

11   to be free from falsified disciplinary reports.").  A false disciplinary action can only form

12   the basis of a cognizable civil rights claim where the plaintiff alleges that the false report

13   was retaliatory in nature, or where procedural due process rights were not satisfied.  See

14   Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997); Newsom v. Norris, 888 F.2d 371 (9th

15   Cir. 1989).  Thus, to state a claim for retaliation, plaintiff must allege that the defendant

16   (1) filed a false disciplinary report; (2) in retaliation for the plaintiff's exercise of a

17   constitutionally protected right; and (3) that the retaliatory action advanced no legitimate

18   penological interest.  Hines, 108 F.3d at 267.

19         Here, plaintiff alleges that Officer Hull filed a false RVR in retaliation for

20   plaintiff's threat to file a complaint against Officer Kimble.  FAC at 9, 12, 17.  However,

21   plaintiff does not allege that Officer Hull *knew* that plaintiff had threatened to file a

22   complaint against Officer Kimble.  Instead, plaintiff alleges that he confronted Officer

23   Hull and told him that he "knew" Hull had written the false RVR to protect Officer

24   Kimble.  FAC at 9.  Plaintiff's allegations indicate that Officer Kimble had knowledge of

25   plaintiff's plan to file a complaint against him; however, the alleged facts do not indicate

26   any link between Officer Kimble's knowledge and Officer Hull's actions.

27         Further, plaintiff does not dispute the truthfulness of the underlying events that

28   eventually lead to the issuance of the RVR.  Specifically, plaintiff was given an RVR for

16

failing to comply with a peace officer's orders.  FAC at 8.  By his own admission, plaintiff refused to comply with such orders.  Id.  Thus, plaintiff has not alleged that the disciplinary report was false in any meaningful way.  Because plaintiff has not alleged that Officer Hull actually knew about plaintiff's threatened exercise of his First Amendment rights, nor can he allege that the disciplinary report was false, the Court GRANTS defendants' motion to dismiss this claim.

### B.    Defendant Bishop

Plaintiff alleges Lieutenant Bishop: (1) violated his Eighth Amendment rights by displaying deliberate indifference to his health and safety; (2) committed elder abuse; (3) violated his Fourteenth Amendment due process rights; (4) is vicariously liable for the acts committed by his subordinates; and (5) violated rights secured to him by the Americans with Disabilities Act.

### 1.    Deliberate Indifference to Health and Safety

Plaintiff alleges that Lieutenant Bishop violated his Eighth Amendment rights by refusing to move plaintiff away from his cellmate, William, who ultimately assaulted plaintiff.  For the reasons enumerated above with regard to Officer Hull, plaintiff has failed to state a claim for deliberate indifference to health or safety.  Accordingly, the Court GRANTS defendants' motion to dismiss this claim.

### 2.    Elder Abuse

Plaintiff alleges that Lieutenant Bishop committed elder abuse against him by forcing him to remain cellmates with William, which ultimately placed his health and safety in jeopardy.  For the reasons described above with regard to Officer Hull, plaintiff has failed to state a claim for elder abuse.  Accordingly, the Court GRANTS defendants' motion to dismiss this claim.

### 3.    Due Process Rights

Plaintiff alleges that Lieutenant Bishop violated his Fourteenth Amendment rights by denying him a fair disciplinary hearing.  FAC at 9.  Specifically, plaintiff alleges that Lieutenant Bishop denied plaintiff's requests for a continuance, an investigator, and a

polygraph test.  For the reasons that follow, the Court finds that plaintiff has not alleged that the November 30, 2007 disciplinary hearing deprived him of due process.

First, plaintiff argues that Lieutenant Bishop should have granted his request for a continuance because Lieutenant Bishop had 23 more days in which to conduct the disciplinary hearing.  The due process time constraints governing disciplinary hearings do not support plaintiff's argument.  Title 15 section 3320 of the California Code of Regulations establishes the timing requirements and procedures for hearings within the California Department of Corrections.  Cal. Code Regs. tit. 15, at §3320.  While plaintiff's assertion that Lieutenant Bishop had a total of 30 days to conduct plaintiff's disciplinary hearing is correct, see section 3320(b), the regulations only require that plaintiff receive at least 24 hours to review the documentary evidence and prepare for the hearing, pursuant to section 3320(c)(1)-(2).  Here, plaintiff had 7 days to review the documentary evidence and prepare for his hearing.  Nothing in the regulations indicates that prison officials are required to provide prisoners with additional time to prepare, as long as these minimum requirements are satisfied.  Moreover, plaintiff has not alleged any facts which suggest there were exceptional circumstances that would justify a delay.  Cal. Code Regs. tit. 15, at §3000 ("Exceptional Circumstances means circumstances beyond the control of the department or the inmate that prevent the inmate or requested witnesses from participating in the disciplinary hearing within established time limitations.  Examples of this as applied to an inmate would include a serious temporary mental or physical impairment verified in writing by a licensed clinical social worker, licensed psychologist, psychiatrist, or physician.").

Second, plaintiff argues that Lieutenant Bishop denied him due process by failing to assign him an investigator or assistant.  In Wolff, the Supreme Court held that the due process clause requires prison officials to allow prisoners to seek the aid of inmates or staff if the inmate is illiterate "or [where] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case."  Brown v. McCormick, 89 F.3d 844, 844 (9th Cir. 1996)

1    (citing <u>Wolff</u>, 418 U.S. at 570).  Plaintiff's FAC is hand written, summarizes the content

2    of the RVR, and displays significant legal research.  It is clear that plaintiff is literate.

3    Further, the charge presented against plaintiff was for failing to comply with a peace

4    officer's orders, an issue which is not particularly complex.  Thus, plaintiff has not stated

5    a claim for violation of his due process rights based on the denial of a staff investigator

6    or assistant.

7         Third, Lieutenant Bishop was not obligated to administer a polygraph test.

8    Section 3293 of title 15 of the California Code of Regulations states that "polygraph

9    examinations *may* be administered . . . in the course of an investigation of official

10   matters."  15 CCR § 3293 (emphasis added).  This language is permissive, not

11   mandatory.  Therefore, Lieutenant Bishop's failure to administer a lie detector test

12   cannot form the basis for a due process claim.

13        Finally, plaintiff's allegations indicate that he was given all the due process

14   protections outlined in <u>Wolff</u>, discussed <u>supra</u>, during his disciplinary hearing before

15   Lieutenant Bishop.  In particular, plaintiff received a copy of the RVR within 15 days of

16   the date of discovery of the RVR; he appeared before Lieutenant Bishop, the Senior

17   Hearing Officer, within 30 days of the date of service of the RVR; he received all

18   relevant documents at least 24 hours in advance of the disciplinary hearing; and he was

19   given the opportunity to enter a plea and make a statement on his own behalf.  FAC at 8-

20   12.  Because plaintiff has not alleged facts that indicate that his due process rights were

21   violated, the Court GRANTS defendants' motion to dismiss this claim.

22                    4.    **Vicarious Liability**

23        Plaintiff alleges that Lieutenant Bishop should be held vicariously liable because

24   he "facilitated, approved and condoned the mistreatment that Mr. Kimble and Mr. Hull

25   inflicted on [plaintiff]" when he stated that "it did not matter who was right or wrong

26   [because Lieutenant Bishop] was always going to support his subordinates."  FAC at 19.

27   Plaintiff further alleges that as a supervisor, Lieutenant Bishop should have taken some

28

corrective action rather than force plaintiff to remain confined with an incompatible cellmate who ultimately assaulted him.  Id.  For the reasons below, this claim fails.

Because vicarious liability "is inapplicable to . . . § 1983 suits," a plaintiff wishing to hold a supervisor liable for actions of his subordinates must show "that each Government-official defendant, through the official's own actions, has violated the Constitution."  Iqbal, 556 U.S. at 676-77.  A plaintiff can state a claim either by showing that the defendant was personally involved in the constitutional deprivation, or that a sufficient causal connection exists between the defendant's wrongful conduct and the resulting constitutional violation.  Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003); Jones v. Williams, 297 F.3d 930, 937 (9th Cir. 2002).  A sufficient causal connection may be demonstrated by alleging: (1) the supervisor's own culpable action or inaction in the control of subordinates; (2) the supervisor's acquiescence in the constitutional deprivation of which a complaint is made; or (3) the supervisor's conduct demonstrated a reckless or callous indifference to the rights of others.  Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013).

First, plaintiff has not alleged any facts indicating that Lieutenant Bishop was involved in the pepper-spraying incident, which plaintiff alleges violated his Eighth Amendment rights.  Nor has plaintiff alleged any facts indicating that Lieutenant Bishop's actions or inaction in supervising his subordinates led to plaintiff being pepper-sprayed, or that Lieutenant Bishop's inattention to his subordinates allowed them to inflict harsher punishment on plaintiff than was warranted.  Lieutenant Bishop is not identified as one of the officers present during the pepper-spraying incident.  By all accounts, Lieutenant Bishop only learned of the incident when Officer Hull filed the RVR.  Thus, plaintiff has failed to allege any culpable action or inaction by Lieutenant Bishop that would support a claim of vicarious liability.

Second, plaintiff has not alleged any facts demonstrating that Lieutenant Bishop acquiesced to a constitutional deprivation committed by his subordinates.  Nothing alleged by plaintiff indicates that Lieutenant Bishop even knew about the pepper-

spraying incident before it was reported to him by Officer Hull.  See Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) ("Officers can be held liable for failing to intercede only if they had an opportunity to intercede"); see also Adams v. Kraft, 2011 WL 3240598, at *21 (N.D. Cal. July 29, 2011) ("Police officers have a duty to intercede when fellow officers commit violations, but must have a realistic opportunity to intercede.").  Additionally, because the Court has already determined that plaintiff has failed to allege a constitutional deprivation, Lieutenant Bishop cannot be said to have acquiesced to such a deprivation.  Thus, plaintiff has failed to allege facts sufficient to support vicarious liability based on Lieutenant Bishop's acquiescence.

Finally, plaintiff has not alleged facts to show that Lieutenant Bishop displayed "reckless or callous indifference" to his rights in either the pepper-spraying incident, or in refusing to assign plaintiff a different cellmate.  As above, Lieutenant Bishop was not present at the pepper-spraying incident, so he could not have been reckless or indifferent to plaintiff's rights as the incident was happening.  Plaintiff only alleges that Lieutenant Bishop was indifferent to plaintiff's  rights by stating that he would support his subordinates regardless of who pepper-sprayed plaintiff.  This allegation alone is insufficient to state a claim for deliberate indifference.  See generally Kraft, 2011 WL 3240598, at *22 (utilizing the deliberate indifference standard when analyzing supervisory liability claims); see also Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998) (holding that, to establish supervisorial liability for failure to train, a plaintiff must show that the failure "amounted to deliberate indifference").

With regard to plaintiff's cellmate assignment, as described supra, plaintiff fails to allege facts which show deliberate indifference to his safety.  Thus, Lieutenant Bishop did not display "reckless or callous indifference" to plaintiff's rights, as required to support a claim for vicarious liability.  Accordingly, the Court GRANTS defendants' motion to dismiss this claim.

1

        **5.**     **Violation of the Americans with Disabilities Act**

2        Finally, plaintiff alleges that Lieutenant Bishop violated the ADA when he

3 returned him to his assigned cell with William.  This claim also fails.  The ADA protects

4 "qualified individuals with a disability" from discrimination by any state or local

5 government or subdivision thereof.   42 U.S.C. §12131.  To be considered disabled the

6 individual must have "a physical or mental impairment that substantially limits one or

7 more major life activities of such individual."  42 U.S.C. §12102.  Plaintiff has failed to

8 allege any facts indicating that his physical injuries and medical conditions

9 "substantially limit" any of his major life activities.  Thus, plaintiff does not fall under

10 the protection of the ADA.  Accordingly, the Court GRANTS defendant's motion to

11 dismiss this claim.

12 **V.**    **CONCLUSION**

13        For the reasons stated above, the Court hereby GRANTS defendants' motion to

14 dismiss the FAC in its entirety, without prejudice.  Plaintiff shall have until **Friday,**

15 **September 18, 2015**, to file a Second Amended Complaint addressing the deficiencies

16 identified herein.  Failure to file a Second Amended Complaint by this deadline will

17 result in dismissal of the action, with prejudice.

18

19 Dated:  August 4, 2015

20                             CHRISTINA A. SNYDER

                                 UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28